**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MICHAEL H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:20-cv-969

Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff Michael H. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, the non-disability decision is supported by substantial evidence in the record as a whole and therefore is AFFIRMED.

**I. Summary of Administrative Record**

On June 19, 2018, Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning on November 1, 2015 based on autism and developmental delay. (Tr. 96, 240). After his applications were denied initially and on reconsideration, Plaintiff requested an evidentiary hearing. On January 9, 2020, Plaintiff appeared with counsel and testified before Administrative Law Judge ("ALJ") Renita K. Bivins. A vocational expert also

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

1

testified. (Tr. 37-68). On February 27, 2020, the ALJ issued an adverse decision. (Tr. 15-31).

Plaintiff has a high school education and was 42, in the "younger individual" age category, on his alleged disability onset date. He remained in the same age category on the date of the ALJ's decision. He resides in a house with his mother, stepfather, and brother. Prior to his alleged disability onset date, Plaintiff worked at Walmart for more than fifteen years, primarily performing janitorial work, until his resignation on November 1, 2015. Although Plaintiff worked only part-time at Walmart, he testified that he often picked up extra days. His earnings record reflects income at the substantial gainful activity ("SGA") level throughout his employment.

In her decision, the ALJ determined that Plaintiff has the following severe impairments: "diabetes mellitus II, hypothyroidism, obesity, autism spectrum disorders, and a depressive/bipolar related disorder." (Tr. 17). The ALJ also considered several impairments that she found to be non-severe, including hyperlipidemia and hypertension. (Tr. 18). After considering all of his impairments, the ALJ determined that none of them, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id*.)

The ALJ next determined that Plaintiff retains the residual functional capacity ("RFC") to perform medium work, meaning that he is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently. However, Plaintiff is further limited by the following non-exertional limitations:

> [He is] able to stand and/or walk for 6 hours per 8-hour day and sit for 6 hours per 8-hour day with normal breaks. Can understand, remember, and carry out simple, short cycle instructions. Able to maintain concentration and attention and sustain persistence and pace to complete tasks with no fast

> pace demands such as automated assembly lines. Able to ask simple questions or request assistance and make judgments commensurate with functions of simple tasks. Can interact with the public, coworkers, and supervisors frequently on a superficial basis, meaning the individual would be working with things rather than people. Can work in an environment where major changes are explained in advance to allow for adjustment with no requirement for strict time limitations or production standards such as an automated assembly line.

(Tr. 21).

Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform his past work as an industrial cleaner. (Tr. 28). In the alternative, the ALJ found that Plaintiff could perform a "significant number" of other jobs in the national economy, including the representative jobs of kitchen helper/dishwasher, linen room attendant, and stacker. (*Id.*) Therefore, the ALJ determined that Plaintiff was not under a disability up through the date of her decision. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In his appeal to this Court, Plaintiff argues that the ALJ violated his procedural right to present additional witness testimony, and that the ALJ committed substantive error by failing to find that he met the criteria for Listing 12.10. The Court finds no reversible error.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity ("SGA"); at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

4

claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520(g), 404.1560(c), 416.920(g) and 416.960(c).

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §§ 404.1512(a); 416.912(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. *See* 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims of Error**

**1. The ALJ's Denial of Additional Witness Testimony**

Plaintiff alleges that before the hearing on January 9, 2020, his attorney informed the ALJ (off the record) that Plaintiff wished to present witness testimony from his mother. The ALJ responded that she "did not have time" to allow for the additional witness at that time but that Plaintiff could request a supplemental hearing. Plaintiff's counsel chose not to reiterate the prehearing request or to voice an objection on the record to the ALJ's denial of the additional witness. Therefore, there is no record of Plaintiff's oral request to present his mother's testimony. *See Crump v. Colvin*, No. 3:12-cv-2910, 2013 WL 7855719 at *10 (N.D. Ohio Oct. 11, 2013) (holding that "Plaintiff's representative waived this issue when the ALJ proceeded onward without Plaintiff's mother testifying as the representative did not object or reiterate his request for Plaintiff's mother to testify.").

On the day following the hearing, however, Plaintiff's counsel submitted the following written request:

5

> *If you do not feel there is sufficient evidence to make a fully favorable decision for the claimant currently, I would like to request that the claim be set for supplemental hearing where his mother could provide testimony.* I[n] addition, I would request that the record be reviewed by a Medical Expert, either by way of attendance at a supplemental hearing or medical interrogatories. Again, we would submit that the claimant meets Listing 12.10 based upon autism spectrum disorder.

(Tr. 199) (emphasis added). The ALJ acknowledged Plaintiff's post-hearing request for a medical expert in her written opinion, but denied the request because "the record provides sufficient evidence to arrive at a decision." (Tr. 25).

Plaintiff does not challenge the denial of a medical expert but does challenge the ALJ's failure to address his request for a supplemental hearing to present his mother's testimony. Plaintiff asserts that the ALJ's failure to provide a supplemental hearing to take his mother's testimony constitutes reversible error. He maintains that because he lives with his mother, her testimony was "highly probative" to his claim. (Doc. 12 at 3). To the extent that the ALJ committed procedural error in failing to explicitly consider or grant Plaintiff's one-sentence post-hearing request, the Court finds any error to be harmless.

Plaintiff's request did not identify the content of his mother's testimony or its relevance. Even before this Court, Plaintiff asserts only that the testimony was relevant because he lives with his mother and she is his "caregiver." (Doc. 12 at 3). But the testimony of a lay witness in support of a social security claim "is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart,* 114 Fed. Appx. 727, 733 (6th Cir. 2004) (citing *Lashley v. Sec'y of HHS,* 708 F.2d 1048, 1054 (6th Cir. 1983)). Here, Plaintiff fails to identify *any* medical source opinion (let alone a treating physician report) that would support greater mental RFC limitations than those found by the ALJ in this case. *See Luteyn v. Com'r of Soc. Sec.*,

6

528 F.Supp.2d 739, 746 (W.D. Mich. 2007) (plaintiff failed to identify any treating physician report that would fully support the anticipated lay testimony of his girlfriend about the severity of plaintiff's mental impairment and his limitations). In addition, while witness testimony can be presented in written form, Plaintiff chose not to submit a written statement from his mother for consideration by either the ALJ (post-hearing) or before the Appeals Council.

Additionally, it appears that any potentially relevant testimony by his mother would have merely duplicated the testimony already provided by Plaintiff and/or evidence elsewhere in the record. Plaintiff himself testified that his mother drives him to his doctors' visits, and will come in. (Tr. 21). He testified that she does the laundry for everyone in the household, including him, but that he will put his own clothes away. He also testified that he spends time with his mother and other family members, and goes to the store with his mother and stepdad. (Tr. 22).

In addition to Plaintiff's testimony, the record contains detailed third party statements *from Plaintiff's mother* that were elicited on initial review. On November 20, 2018, an agency employee spoke with Plaintiff's mother to discuss Plaintiff's activities of daily living, his ability to relate to others and take supervision, and his ability to handle stress. (Tr. 98). At the time, his mother reported that he "plays on the computer, does some chores like garbage," but "does not prepare meals" other than being "able to make a burger on a George Foreman Grill." (*Id.*) She reported he does not have a license or drive, but is able to care for personal hygiene without reminders, and did not need reminders to clean up or complete chores. (Tr. 98-99). She reported he was "into archeology and …spends a lot of his day researching and reading." (Tr. 99). Regarding his ability to relate to others, she stated he "does pretty good getting along with others,"

7

but is mostly around family with whom he is comfortable. (Tr. 98). She said that "he would get along with a supervisor ok if he had to." (*Id.*) She reported he does not handle stress very well, recalling an incident where they did not go somewhere he was anticipating and he got really upset and cried. (*Id.*) However, she also opined that "if he was out of his normal routine she thinks he would be ok" but that it is "hard to judge" since he is generally only around family. (*Id.*)

Because there is no evidence that Plaintiff's mother would have provided any additional or non-duplicative information, any error in the ALJ's failure to hear her testimony was harmless. "[E]ven if the ALJ erroneously disregards a lay witness's testimony, the error is harmless if 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Maloney v. Com'r of Soc. Sec.*, 480 Fed. Appx. 804, 810 (6th Cir. 2012) (internal citation omitted).

**2. Whether Plaintiff Met or Equaled Listing 12.10**

In his second claim of error, Plaintiff asserts that the ALJ erred by failing to find that he meets or equals Listing 12.10 for Autism Spectrum Disorder. If a claimant meets or equals a Listing at Step 3 of the sequential analysis, he is entitled to a presumption of disability. Here, however, substantial evidence exists to uphold the ALJ's Step 3 determination that Plaintiff did not meet or equal the Listing.

An examining consulting psychologist assessed Plaintiff with "Autism Spectrum Disorder, Level 1," indicating the lowest "level of support" classification under DSM-V criteria. (Tr. 324). As with most conditions, the mere diagnosis of Autism Spectrum Disorder does not mean that the person experiences symptoms of Listing level severity. It remains a claimant's burden to prove that he meets or equals a Listing. In order to carry that burden of proof here, Plaintiff was required to show that he has "marked" limitations

8

in at least two out of four broad areas of functioning known as the Paragraph B domains, or "extreme" limitations in at least one domain.

In the record presented, the ALJ found only "moderate" limitations in all four Paragraph B domains. First, the ALJ determined that Plaintiff has only "moderate" limitations in the domain of understanding, remembering or applying information, and in the domain of concentrating, persisting or maintaining pace. (Tr. 19-20). Plaintiff does not challenge the ALJ's assessment of his limitations in those two domains. Instead, Plaintiff argues error in the ALJ's finding of "moderate" rather than "marked" limitations in the remaining two domains of "interacting with others" and in "adapting and managing oneself."

However, the ALJ's analysis of Plaintiff's degree of limitation in the referenced domains is substantially supported. No treating, examining or reviewing medical source opined that the severity of Plaintiff's impairment met or medically equaled the criteria for a listed impairment. (Tr. 19). And the ALJ found "generally persuasive" the opinions of two state agency psychological consultants, Kristen Haskins, Psy.D., and Cynthia Waggoner, Psy. D., both of whom opined that Plaintiff had moderate limitations in the Paragraph B areas. (Tr. 26, *see also* Tr. 100, 112-13, 126, 139).

In addition to the opinions of the reviewing psychologists, the ALJ offered the following rationale in support of her assessment of only "moderate" limitations in the domain of "interacting with others":

> In interacting with others, the claimant has a moderate limitation. The claimant told Dr. Twehues that customers at Wal-Mart would become angry with him and would yell at him, and that he would sometimes yell back (Exhibit 2F, page 4). However, he also had friends (Exhibit 2F, page 4). Claimant stated when he was working that some customers were nice and some were rude. He testified that he got along with his supervisor and the person that he worked with sometimes performing his cleaning duties. He testified that he spends time with his mother, stepfather, brother, uncle, and

9

> aunt. He goes with his mother and stepdad to the store. He testified that he left Wal-Mart because the manager would not give him time off on weekends, which he wanted so he could visit family members and go out to eat. There is no evidence supporting limitations greater than "moderate" in this area.

(Tr. 19-20).

Seeking to prove that he instead has "marked" limitations in this domain, Plaintiff argues that the ALJ's findings "do not *preclude* a finding [of] marked limitation." (Doc. 12 at 4, emphasis added). But it is Plaintiff's burden to *prove* he had marked limitations. While the ALJ's findings may not be wholly incompatible with a determination of "marked" limitation, they are more consistent with and provide substantial evidentiary support for her finding of "moderate" limitation in the domain of interacting with others.

Plaintiff also points to a consultative examination by Jessica Twehues, PhD, in which Dr. Twehues described his "odd social presentation and mannerisms consistent with that of a child" including giddiness. (Tr. 321-322). She concluded that he "demonstrates poor use of social skills," noting his mannerisms included "sometimes giggling." (Tr. 325). However, even Dr. Twehues did not opine that Plaintiff had marked or extreme limitations. And as stated, two reviewing psychologists assessed only moderate limitations. In addition, the ALJ discussed Dr. Twehues's report at length, finding many of her opinions to be only "partially persuasive." (Tr. 26).

> [Dr. Twehues] expected occasional angry outbursts, which is inconsistent with [Plaintiff's] report to Dr. Twehues that he does not lose his temper quickly, and is inconsistent with her notation that he did not describe angry outbursts (Exhibit 2F, page 4). Further, the claimant testified that he got along with his supervisor and the person that he worked with sometimes performing his cleaning duties. Claimant also explained that if a supervisor stated he did not like something or that claimant was not doing something right, then it would make him frustrated but it was okay.
>
> She opined that he may misread social cues and misinterpret others['] behavior. She opined that he is likely to have difficulty relating adequately with his peers due to autism, which is not entirely consistent with claimant's

10

> past work history at Walmart for over 15 years as it appears unlikely that he would have made employment for over a decade misreading social cues. Nevertheless, based on claimant's diagnosis, Dr. Twehues is somewhat persuasive in her opinion that the claimant may have moderate social difficulty responding appropriately to work pressures. He reported occasional depressive symptoms, and his depressive disorder appears in remission. He testified that he got along with his supervisor and the person that he worked with sometimes performing his cleaning duties. Claimant also explained that if a supervisor stated he did not like something or claimant was not doing something right, then it would make him frustrated but it was okay.

(Tr. 27).

It is worth repeating that Plaintiff does not challenge the ALJ's finding of only "moderate" limitations in two out of the four paragraph B domains. To win remand, he must show that the ALJ's finding of moderate limitations was not substantially supported in the remaining two domains. In addition, he must show at least "marked" limitations in both domains of interacting with others and in adapting or managing oneself, or at least one "extreme" limitation.

Plaintiff's claim fails in part because the ALJ's assessment of only moderate limitations in the domain of interacting with others is substantially supported. Plaintiff's challenge to the ALJ's assessment of moderate limitation in the domain of adapting or managing oneself is similarly unpersuasive. The ALJ reasoned:

> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant worked at Wal-Mart for roughly 16 years. He testified that he left that job not due to difficulty performing the job, but because he wanted weekends off to visit family members and go out to eat. He uses a computer and uses it to watches documentaries, movies, stories about nature, email and Facebook. He cooks simple meals, unloads the dishwasher and put dishes away (Testimony). His hobby is reading about science and archaeology (Testimony). He stated that when working, he managed his money without help, paid the Internet bill, and saved his money for books and clothes (Testimony). Therefore, the undersigned finds the evidence demonstrates that the claimant has no more than a moderate limitation in this area.

11

(Tr. 20). Seeking to prove "at least marked" limitations, Plaintiff points to evidence that he has never lived independently or obtained a driver's license, that he received tutoring and/or special services while in school, and that he was trained by a job coach when he first began his Walmart employment. Plaintiff also testified that he was once taken advantage of by a "Nigerian scam" on the internet where money was taken from his account. (Tr. 60).

But Plaintiff's evidence does not outweigh the substantial evidence on which the ALJ relied to support her finding of only "moderate" limitation in the domain of adapting or managing oneself. Plaintiff reported that, with tutoring, he was able to graduate from regular high school classes. (Tr. 320). His IQ was assessed in the low average range. The ALJ discussed Plaintiff's testimony that he enjoyed going out to eat, was able to manage his money while working, put away his dishes and his clothes, and was able to care for his personal hygiene. (Tr. 22).

With respect to Plaintiff's initial need for job training at Walmart, the ALJ noted that Plaintiff had proven himself capable of performing that job at SGA levels for more than 15 years, and testified that he quit primarily because he wanted weekends off to socialize with family. When he quit, he provided two weeks' notice. (Tr. 22). "The vocational expert also explained the job coaches do not train, but watch the individual to see if they are maintaining the job functions." (Tr. 30). Moreover, the vocational expert stated that it would take 60 days to learn the identified alternative jobs, and that all of them could be performed at a seventh grade educational level by someone who possesses Plaintiff's RFC. (Tr. 29).

12

### III. Conclusion and Order

The ALJ's well-reasoned non-disability determination is well within the "zone of choice" and is supported by substantial evidence in the record as a whole. Therefore, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge